**\*E-FILED 11/07/2007\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| XIAOKE TAO, | No. C07-02216 HRL |
| Plaintiff, | **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL CHERTOFF, as Secretary of the Department of Homeland Security; EMILIO GONZALEZ, Director of the U.S. Citizen and Immigration Services; GERARD HEINAUER, Director of the Nebraska Service Center, U.S. Citizenship and Immigration Services, | |
| Defendants. | **[Re:  Docket Nos. 21 and 22]** |

Pro se plaintiff Xiaoke Tao is a citizen of the People's Republic of China who sues to compel the processing of her employment-based I-485 application for adjustment of status to lawful permanent resident. In August 2007, this court denied defendants' motion to dismiss the complaint. Defendants advise that they subsequently requested that plaintiff's application be expedited. However, her application remains pending due to the FBI's uncompleted name check.

The parties presently are before this court on cross-motions for summary judgment.[1] Upon consideration of the moving and responding papers, as well as the arguments presented at the November 6, 2007 motion hearing, this court grants in part and denies in part both motions.

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

## I. BACKGROUND

Except as otherwise indicated, the following facts are not materially disputed:

Plaintiff's I-485 application was filed with U.S. Citizen and Immigration Services ("USCIS") on December 27, 2004. USCIS submitted her name check request to the FBI on January 13, 2005. (*See* Heinauer Decl., ¶ 18). The FBI received the request on or about February 4, 2005. (Cannon Decl., ¶ 22). On March 2, 2007, the application was transferred to the Nebraska Service Center, where it remains pending due to the FBI's uncompleted name check.

A name check is one of several forms of security and background checks that must be completed when an alien applies for adjustment of status. (*See* Heinauer Decl., ¶ 10). According to Michael Cannon, Section Chief of the National Name Check Program Section at the FBI's headquarters, historically, 68 percent of the name checks submitted by USCIS are returned within 48-72 hours with "No Record," meaning "that the FBI's Universal Index database contains no identifiable information regarding a particular individual." (Cannon Decl., ¶ 13).

The remaining name checks proceed to an additional level of review; and, typically, 22 percent of the USCIS requests are returned at this stage within 30-60 days as having "No Record." (*Id*., ¶ 14). Thus, by the end of the second stage, 90 percent of name checks are returned with no identifiable information for a particular individual. (*Id*.).

The remaining 10 percent are identified as possibly being the subject an of FBI record. (*Id*.). FBI records must be manually retrieved and reviewed, unless the relevant records have been electronically uploaded into the FBI's electronic record-keeping system. (*Id*.). In the end, "[l]ess than one percent of USCIS's requests are identified with a file containing possible derogatory information." (*Id*., ¶ 15). Name check requests are generally handled on a "first-in, first-out basis," unless the USCIS directs the FBI to expedite a name check. (*Id*., ¶ 19).

Plaintiff claims that defendants have unreasonably delayed the adjudication of her application, which has been now been pending for nearly three years. She seeks relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. and the mandamus statute, 28

U.S.C. § 1361. Defendants argue that any delay in the processing of plaintiff's application has not been unreasonable.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See* FED. R. CIV. P. 56(e); *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

3

### III.  DISCUSSION

**A.     Mandamus and the APA**

Plaintiff seeks relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. and the mandamus statute, 28 U.S.C. § 1362.  Under the APA, "[t]o the extent necessary to decision and when presented, the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ."  5 U.S.C. § 706(1).  Additionally, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  *Id*., § 555(b).  To invoke jurisdiction under the APA, plaintiff must show that defendants (1) had a nondiscretionary duty to act and (2) unreasonably delayed in acting on that duty.  *See Gelfer v. Chertoff*, C06-06724, 2007 WL 902382, *1 (N.D. Cal., Mar. 22, 2007) (*citing Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004)).

Under the mandamus statute, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  This relief is "available to compel a federal official to perform a duty if:  (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir.1998).

Although the mandatory injunction under the APA is technically distinct from a writ of mandamus, the relief plaintiff seeks is identical under either statute.  *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997).  Thus, whether the court proceeds under one or the other in the instant case is not of practical significance.  *See Gelfer*, No. C06-06724, 2007 WL 902382 at *3.

Courts in this district have concluded that the USCIS has a mandatory duty to process applications within a reasonable time and, further, that jurisdiction lies to hear an allegation that the determination of an application has been unlawfully withheld.  *See, e.g., Gelfer*, No. C06-06724, 2007 WL 902382 at *2; *Razaq v. Poulos*, No. C06-02461, 2007 WL 61884, *3 (N.D.

4

Cal., Jan. 8, 2007); *Singh v. Still*, 470 F. Supp.2d 1064, 1066-67 (N.D. Cal. 2007); *Aboushan v. Mueller*, No. C06-01280, 2006 WL 3041086, *2 (N.D. Cal., Oct. 24, 2006). Nevertheless, insofar as plaintiff seeks a court order compelling defendants to approve her application, her summary judgment motion is denied and defendants' motion is granted. "The Court cannot compel an agency to exercise its discretion in a particular manner." *Yu v. Brown*, 36 F. Supp.2d 922, 931 (D.N.M. 1999).

The question before this court is whether any delay in the government's processing of plaintiff's application has been unreasonable.

**B.   The "TRAC" Factors**

The Ninth Circuit has adopted a six-factor test – the so-called "TRAC" factors[2] – to determine when agency delay is unreasonable:

   (1)   the time agencies take to make decisions must be governed by a "rule of reason";

   (2)   where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

   (3)   delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

   (4)   the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

   (5)   the court should also take into account the nature and extent of the interests prejudiced by delay; and

   (6)   the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001); *Telecomms. Research & Action Ctr. v. Fed. Communications Comm'n*, 750 F.2d 70, 80 (D.C.Cir.1984).

---

   [2]   These factors are so named for *Telecomms. Research & Action Ctr. ("TRAC") v. Fed. Communications Comm'n*, 750 F.2d 70 (D.C.Cir.1984).

5

### 1.     **First and Second Factors**

The first factor requires an agency to use a "rule of reason" in its decision-making. The second factor provides that where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.

Plaintiff suggests that the fact that her application has been pending for nearly three years is patently unreasonable. She argues that Congress intended applications to be adjudicated within 180 days. *See* 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . .."). That 180-day timetable may provide some guidance here, although the "sense of Congress" expressed in INA Section 1571(b) does not necessarily carry the force of law. *See Yang v. California Dep't of Social Servs.*, 183 F.3d 953, 958-59 (9th Cir. 1999).

Defendants argue that there is no statutory deadline by which applications must be adjudicated and that, in any event, the "first-in, first-out" protocol must be given deference. True, Congress has not established a mandatory timeframe for the USCIS to adjudicate applications. Moreover, "'[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process, especially since administrative efficiency is not a subject particularly suited to judicial evaluation.'" *Yu*, 36 F. Supp.2d at 934 (quoting *Singh v. Ilchert*, 784 F. Supp. 759, 764-65 (N.D. Cal. 1992)). However, the court also recognizes that there is no precise formula for determining whether there has been an unreasonable delay. Instead, "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Id*.

Here, defendants maintain that it would be unfair to permit plaintiff to leapfrog other applicants in the "first-in, first-out" queue. While defendants have submitted some evidence generally indicating that plaintiff's application has been and is being processed in accordance with the FBI's "normal protocol," (*see, e.g.,* Cannon Decl., ¶ 22), the record before the court indicates that plaintiff has waited her turn while untold numbers of later-filed applications have

been processed ahead of hers. As noted above, absent special circumstances, it seems that the majority of applications typically are processed within about six months or so. (*See* Cannon Decl., ¶¶ 13-14; Heinauer Decl., ¶ 10 and attached fact sheet at p. 2). There is no apparent dispute as to plaintiff's contention that, as of August 2007, the government reportedly was processing I-485 applications received nearly two years after plaintiff's application was filed. (*See* Plaintiff's Mot. at 5). In the meantime, plaintiff was first fingerprinted on March 13, 2005 – and then apparently had to be re-printed on October 6, 2006 because "[t]he fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated." (Heinauer Decl., ¶ 15).

The record before the court suggests that processing times for applications will vary because some applications may be expedited or require greater scrutiny than others. (*See, e.g.,* Cannon Decl., ¶ 20). Here, however, there is no evidence explaining why the FBI needed several years to process plaintiff's name check in particular.[3]

### 2. Third and Fifth Factors

The third TRAC factor provides that delays affecting human health and welfare are less tolerable than those concerning only economic interests. The fifth factor requires the court to consider the nature and extent of any interests prejudiced by the delay.

In this case, plaintiff contends that she has been "damaged" insofar as she has been "unable to plan or pursue a future course of action in the United States" and "by repeatedly applying and paying for extensions of employment authorization and travel document . . .." (Plaintiff's Mot. at 8). While there appears to be no material dispute that plaintiff cannot work or travel without restriction, the government has submitted evidence indicating that she "currently holds a work authorization document permitting [her] to work for any employer [she]

---

[3] Defendants point out that on July 2, 2007, the Department of State announced that the numerical limit on employment-based visa numbers have been exhausted for the fiscal year 2007 and that new visa numbers for the fiscal year 2008 would not be available until October 1, 2007. (*See* Heinauer Decl., ¶¶ 8-9). In a similar action, the government has stated that this is no longer the case and that visas are now available as soon as the name check is completed. *See Wang, et al. v. Gonzales, et al.*, C07-02348, 2007 WL 2972917 at *5 (N.D. Cal., Oct. 10, 2007). In any event, whatever the rule may be, the point is now moot.

7

wishes valid through February 27, 2008. In addition, Plaintiff currently holds an advance parole travel document valid through November 15, 2007." (Heinauer Decl., ¶ 25).

In evaluating the nature and extent of any prejudice to plaintiff, this court cannot assume that the government's decision on plaintiff's pending application will be favorable to her. If the application is denied, the interest that will have been affected is plaintiff's interest in knowing sooner rather than later whether she may stay in this country. *See Razaq*, No. 06-02461, 2007 WL 61884 at *7. Thus, the court finds that there is an important non-economic interest at stake, but plaintiff's showing as to the extent of any prejudice is nonetheless underwhelming.

### 3.     **Fourth and Sixth Factors**

The fourth TRAC factor directs the court to consider the effect of expediting delayed action on agency activities of a higher or competing priority. However, the sixth factor provides that no finding of impropriety is required before finding that agency action has been unreasonably delayed. Here, defendants assert that, since September 11, 2001, the FBI's workload has increased and it has had to complete security checks more carefully and thoroughly. As such, defendants contend that any delay in the adjudication of plaintiff's application is justified in view of the government's paramount interest in securing the nation's safety. Conversely, the government argues that permitting plaintiff to jump ahead in the "first-in, first-out" process will only delay other applications and intrude upon the government's efforts to safeguard national security.

The uncontroverted evidence submitted by the government indicates that the administrative burden of processing name checks is considerable. The FBI is responsible for handling name checks for a number of government agencies, including USCIS. (Cannon Decl., ¶ 4). Before September 11, 2001, the FBI processed approximately 2.5 million name check requests per year. (*Id*., ¶ 16). For the fiscal year 2006, the FBI processed over 3.4 million name checks. (*Id*.). Since September 11, 2001, the FBI reportedly has received hundreds of thousands of name check requests from USCIS alone. (*See* Heinauer Decl., ¶ 17). The government indicates that it is currently working to improve its name check process. (*See id*., ¶ 13). This court appreciates the administrative burden faced by defendants, but it does not find

8

that assertions of overwork alone are sufficient to justify substantial delays. *See Yu*, 36 F. Supp.2d at 934 ("[D]elays of [a significant] magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork.") (citations omitted).

"Undoubtedly, national security must be considered a competing priority of the highest order. However, the mere invocation of national security is not enough to render agency delay reasonable per se." *Singh*, 470 F. Supp.2d at 1069. Here, there is no particularized showing that plaintiff's application is especially complex or present any national security concerns. If there were, the fact that she is living and working in this country suggests that national security interests require that her background checks be completed sooner rather than later. *See Toor v. Still*, 2007 WL 2028407, No. C07-0645, *2 (N.D. Cal., Jul. 10, 2007) ("[C]onsidering the fact that most applicants will be physically present in the United States, [allowing inaction] seems antithetical to the national security interests."); *see also Dong v. Chertoff*, 2007 WL 2601107, No. C07-0266, *10 (N.D. Cal., Sept. 6, 2007) (same). Additionally, if status were to be adjusted in error, the government may rescind the status and initial removal proceedings. *See* 8 U.S.C. §§ 1227(a)(1)(A), 1256(a); *Singh*, 470 F. Supp.2d at 1070. In any event, as discussed above, it is not apparent that plaintiff will gain an unfair advantage by being placed back into the "first-in, first-served" queue.

Thus, while the court is not overwhelmed by plaintiff's arguments as to any prejudice she reportedly has suffered, it does conclude that she has important non-economic interests at stake. Her application has been pending for nearly three years, and nothing in the record presented demonstrates that the delay has been reasonable as a matter of law.

### IV.  ORDER

Based on the foregoing, the court grants in part and denies in part the parties' summary judgment motions. Defendants shall adjudicate plaintiff's I-485 application by **February 8, 2008**. By that date, defendants shall file an affidavit with the court demonstrating compliance.

1   This case shall remain open pending receipt of defendants' affidavit.

2   IT IS SO ORDERED.

3   Dated: November 7, 2007

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**United States District Court**
For the Northern District of California

**5:07-cv-2216 Notice electronically mailed to:**

Ila Casy Deiss ila.deiss@usdoj.gov, tiffani.chiu@usdoj.gov

**Counsel are responsible for delivering copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

**5:07-cv-2216 Notice mailed to:**

Xiaoke Tao
861 Brent Drive
Cupertino, CA 95014